# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., echo star TECHNOLOGIES L.L.C., and NAGRASTAR LLC<br><br>                    Plaintiffs,<br><br>     v.<br><br>ELAINE SANCHEZ,<br><br>                    Defendant.<br>_____/ | CASE NO. 1:11-cv-01485-AWI-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT BE GRANTED**<br><br>(Docket No. 14)<br><br>**OBJECTIONS DUE: 14 DAYS** |

## I. INTRODUCTION

On February 8, 2012, Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C. and NagraStar LLC (collectively "Plaintiffs") filed the present motion for default judgment against Defendant Elaine Sanchez ("Defendant"). (Doc. 14.) The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Upon review of the motion and the supporting documents, the matter was found suitable for a decision without oral argument pursuant to the United States District Court for the Eastern District of California Local Rule 230(g), the hearing set for April 4, 2012, was vacated, and the matter was submitted. For the reasons set forth below, the Court RECOMMENDS that Plaintiffs' motion for default judgment be GRANTED.

## II. FACTUAL BACKGROUND

Plaintiffs filed this civil action on September 2, 2011. (Doc. 1.) The complaint alleges violations of 17 U.S.C. § 1201 *et seq.*, 47 U.S.C. § 605 *et seq.*, and 18 U.S.C. §§ 2511 *et seq.* The suit is based on Defendant's alleged unlawful circumvention of the DISH Network security system and unlawful interception and receipt of copyrighted, subscription-based DISH Network satellite television programming. (Doc. 1, ¶ 8.)

Plaintiff DISH Network, L.L.C. ("DISH Network") is a provider of satellite television programming. (Doc. 1, ¶ 9.) DISH Network uses high-powered satellites to deliver its broadcasts to customers who have paid the required subscription fee or the purchase price for pay-per-view broadcasts. (Doc. 1, ¶ 10.) To receive DISH Network programming, a subscriber must possess a satellite television system consisting of a compatible dish antenna, receiver, and a smart card.[1] (Doc. 1, ¶ 14.) Each smart card contains a secure embedded microprocessor which functions as a security computer when inserted into a receiver. (Doc. 1, ¶ 17.) The receiver and smart card work in conjunction to convert, or unscramble, DISH Network's encrypted satellite signal to viewable programming.[2] (Doc. 1, ¶ 18.) In effect, each receiver and smart card is programmed to decrypt only television programming corresponding to the level of service that the subscriber is authorized to receive. (Doc. 1, ¶ 18.)

Defendant is alleged to have unlawfully circumvented DISH Network's security system by subscribing to a pirate television service operated by www.dark-angel.ca ("Dark Angel"). (Doc. 1, ¶ 24.) Dark Angel operated a pirate computer server that extracted control words or "keys" from legitimate DISH Network receiving equipment and transmitted them to its subscribers through the

---

[1] Plaintiff EchoStar Technologies, L.L.C. ("EchoStar") designs and distributes receivers, dish antenna, and other equipment for DISH Network. (Doc. 1, ¶ 14.) Plaintiff NagraStar LLC ("NagraStar") provides smart cards and other technology to DISH Network. (Doc. 1, ¶ 15.)

[2] The EchoStar receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission and forwarding that message to the smart card. (Doc. 1, ¶ 17.) The smart card unlocks the message, uncovering a control word or "key" which is then transmitted back to the receiver to decrypt the DISH Network satellite signal. (Doc. 1, ¶ 17.)

internet.³ (Doc. 1, ¶ 21.) In a separate lawsuit, Plaintiff Dish Network seized Dark Angel's business records and computer server, and was able to identify Dark Angel subscribers and their connections to the Dark Angel IKS server and corresponding piracy of DISH Network programming. (Doc. 14-4, Rogers Decl., ¶¶ 2, 4.) The seized records contained information which indicated that Defendant was a paying subscriber to Dark Angel's service.⁴ (Doc. 1, ¶ 24.) The records also indicate that Defendant connected to Dark Angel's IKS server on at least thirty-four instances beginning on March 5, 2010, and ending on June 6, 2010, essentially allowing Defendant to receive unlimited access to DISH Network programming. (Doc. 14-4, Rogers Decl., ¶ 4.)

According to the complaint, Plaintiffs have the authority of the copyright holders to protect the works from unauthorized reception and viewing. (Doc. 1, ¶¶ 11, 12.) Count I of the complaint claims a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1) (Circumvention of Copyright Protection Systems), alleging that Defendant willfully circumvented the DISH Network security system for purposes of commercial advantage or private financial gain. (Doc. 1, ¶¶ 28, 32.) Plaintiffs seek the greater of actual damages plus any profits realized by Defendant resulting from the alleged violations, or statutory damages in the amount of $2,500 for each violation. (Doc. 1, ¶ C.)

Count II asserts a violation of 47 U.S.C. § 605(a) (Unauthorized Publication or Use of Communications) based on the same allegations. (Doc. 1, ¶¶ 33-36.) Again, Plaintiffs seek the greater of actual damages plus any profits realized by Defendant resulting from the alleged violations, or statutory damages in the amount of $10,000 for each violation. (Doc. 1, ¶ D.)

---

³ This form of piracy is known in the piracy community as internet key sharing ("IKS"). (Doc. 14-4, Rogers Decl., ¶ 3.) Dark Angel operated a pirate computer server ("IKS server") that was connected to legitimate DISH Network receiving equipment. (Doc. 1, ¶ 21.) Using pirate software and technology, Dark Angel extracted secret proprietary codes or "keys" and transmitted them over the internet to its subscribers so that they could use the control words to receive, without authorization, DISH Network's satellite signal. (Doc. 14-4, Rogers Decl., ¶ 3.)

⁴ Documents concerning Defendant were found in the seized Dark Angel records including an email confirming purchase of a one-month subscription on September 3, 2009, via PayPal under the username "mustwatchtv"; an email confirming the purchase of a three-month subscription on March 1, 2010, via PayPal under the same username; a payment receipt corresponding with the purchase of a three-month subscription to Dark Angel on or about June 2, 2010, via RegNow; and an internal Dark Angel email dated June 1, 2010, confirming purchase of the Dark Angel subscription again under the username "mustwatchtv." (Doc. 14-4, Rogers Decl., ¶ 4.)

3

Plaintiffs also seek to increase that amount up to $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). (Doc. 1, ¶ D.)

Count III claims violations of 18 U.S.C. §§ 2511(1)(a) and 2520 (Electronic Communications Privacy Act) based on the same facts. (Doc. 1, ¶¶ 37-40.) As to Count III, Plaintiffs again seek the greater of actual damages plus any profits realized by Defendant resulting from the alleged violations, or statutory damages in the amount of $100 per day for each day of violation or $10,000. (Doc. 1, ¶ E.)

On December 13, 2011, the summons was returned showing that service of the summons and complaint were executed on December 3, 2011. (Docs. 9, 10.) Defendant did not file a response to the complaint, and on December 29, 2011, pursuant to Plaintiffs' request, the Clerk entered default against Defendant. (Doc. 12.) On February 8, 2012, Plaintiffs filed this motion for default judgment against Defendant. (Doc. 14.) Defendant was served with Plaintiffs' motion but did not oppose it. (*See* Doc. 14-7.)

### III. DISCUSSION

**A.     Legal Standard for Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

> By the Court.  In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>
> (A)     conduct an accounting;
> (B)     determine the amount of damages;
> (C)     establish the truth of any allegation by evidence; or
> (D)     investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Here, the summons and the complaint were properly served upon Defendant, the default was properly entered, and the complaint is sufficiently well-pled. *See Eitel*, 782 F.2d at 1471-72. By default, Defendant admitted to willfully violating Sections 2511 and 2520. *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18.

**B.     Application of the *Eitel* Factors**

**1.     Possibility of Prejudice to Plaintiffs**

Typically, this factor weighs in favor of default judgment because, if default judgment is not entered against a defendant who has refused to participate in the litigation, the plaintiff may be effectively denied a remedy until such time as the defendant participates and makes an appearance in the litigation – which may never occur. Denying a plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Here, Defendant has failed to appear and Plaintiffs have no alternative by which to recover damages. Thus, this factor weighs in favor of granting default judgment.

**2.     Merits and Sufficiency of Plaintiffs' Complaint**

The next relevant *Eitel* factors include consideration of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In evaluating the adequacy of the complaint, courts determine whether it sufficiently states a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotations omitted).

Title 18 of the United States Code, Section 2511 is part of the Electronic Communications Privacy Act ("ECPA") and prohibits any person from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept, or endeavor to intercept, any wire, oral, or

electronic communication." Although Section 2511 is a criminal provision which does not itself provide a private right of action, Section 2520(a) "does provide a private cause of action for violation of Section 2511(1)(a)." *See EchoStar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1208 (S.D. Cal. 2008); *see also DIRECTV, Inc. v. Brower*, 303 F. Supp. 2d 856, 863 (W.D. Mich. 2004.) ("[I]t is well established that § 2520(a) provides a private right of action for violations of § 2511.") Section 2520(a) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

To state a claim under Section 2520(a) for a violation of Section 2511, the plaintiff must plead facts showing that the defendant intentionally intercepted plaintiff's satellite television programming without proper authorization. *See DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (satellite television signals are among the "electronic communications" protected by ECPA, prohibiting unauthorized receipt and use of radio communications for one's own benefit or for benefit of another not entitled thereto). In *DISH Network, LLC v. DelVecchio*, No. 11-cv-6297-CJS, 2011 WL 4747848 at *3-4 (W.D.N.Y. Oct. 7, 2011), the court determined that allegations that a consumer used a key sharing television service and server to obtain a satellite television provider's de-scrambling control words to illegally receive, intercept, and de-scramble providers copyrighted television programmer sufficiently alleged a claim under the ECPA.

In the complaint, Plaintiffs assert that they have the authority to protect the television programming from unauthorized reception and viewing. (Doc. 1, ¶¶ 11, 12.) Plaintiffs allege that Defendant unlawfully intercepted DISH Network satellite television programming through Defendant's subscription to the Dark Angel IKS service. (Doc. 1, ¶ 8.) Plaintiffs support their allegations by providing evidence that on at least thirty-four separate occasions, Defendant accessed the Dark Angel IKS server and received unauthorized DISH Network programming. (Doc. 1, ¶ 24.)

This Court finds that Plaintiffs have adequately set forth a claim under Sections 2520(a) for a violation of Section 2511.[5]

Plaintiffs' claims for violation of Sections 2511 and 2520 are generally well pled and the claims for which Plaintiff seeks damages in default judgment are sufficiently stated. Therefore, this factor weighs in favor of granting default judgment.

### 3.  The Sum of Money at Stake

The fourth *Eitel* factor, the sum of money at stake, also weighs in favor of default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, Plaintiffs seek an award of $10,000 for statutory damages pursuant to 18 U.S.C. § 2520(c)(2)(B). Under the statute, Congress has expressly permitted a court to assess damages as the greater of (1) actual damages suffered by plaintiff and any profits made by the violator, or (2) statutory damages of $100 a day for each day of violation or $10,000. Because Congress expressly authorized a court to award damages of at least $10,000, the Court cannot conclude that this amount is per se unreasonable such that it would preclude or weigh against the entry of default judgment. This factor weighs in favor of default judgment.

### 4.  Possibility of A Dispute Concerning Material Facts

The Court also considers the possibility of a dispute as to any material facts. With regard to this factor, no genuine issue of material fact is likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendant has submitted nothing to dispute Plaintiffs' well-pled allegations. Accordingly, this factor favors entry of default judgment.

### 5.  Whether Default was Due to Excusable Neglect

There is no evidence that Defendant's failure to participate in the litigation is due to excusable neglect. Defendant was served with the summons and complaint, along with a copy of Plaintiffs'

---

[5] Plaintiff also pled counts for violation of 17 U.S.C. § 1201(a)(1) and for violation of 47 U.S.C. § 605(a). In its motion for default judgment, however, Plaintiff does not seek an award of damages pursuant to these claims, and has agreed to dismiss these claims, with prejudice, provided that relief is granted as to Count III of the complaint.

motion for default judgment, and therefore has been made aware of the lawsuit. (*See* Docs. 9, 10, 14-7.) Thus, this factor weighs in favor of granting default judgment.

### 6. Policy Favoring Decisions on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

### 7. Conclusion

On balance, as discussed above, the *Eitel* factors weigh in favor of awarding default judgment. The amount of damages to be awarded upon default judgment is discussed below.

## C. Damages Pursuant to 18 U.S.C. 2520(c)(2)

Damage allegations are not taken as true; they must be proven. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). In its motion, Plaintiff seeks default judgment and an award of damages pursuant to 18 U.S.C. §§ 2511(1)(a) and 2520 (statutory damages) in the amount of $10,000 against Defendant for unlawfully intercepting and receiving DISH Network television programming. (Doc. 14-1, 7:9-9:15.)

Section 2520(a) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). Section 2520(c) is divided into two parts, the first of which provides a damage remedy for a violation that "is the private viewing of a private satellite video communication that is not scrambled or encrypted." 18 U.S.C. § 2520(c)(1). Subsection (c)(2) provides a damage remedy for "any other action under" the section. 18 U.S.C. § 2520(c)(2).

Thus, for a violation involving interception of scrambled or encrypted electronic communications, as is the situation presented by the allegations of Plaintiffs' complaint, Section 2520(c)(2) provides that a "court *may* assess as damages whichever is the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is greater of $100 a day for each day of violation

or $10,000." 18 U.S.C. § 2520(c)(2) (emphasis added). The court has discretion under Section 2520 to award either the statutory sum or no damages at all. *See DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004); *see also Dorris v. Absher*, 179 F.3d 420, 430 (6th Cir. 1999.) (citing *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996)); *see also Nalley v. Nalley*, 53 F.3d 649, 654 (4th Cir. 1995); *see also DIRECTV, Inc. v. Barczewski*, 604 F.3d 1004, 1009 (7th Cir. 2010) (overruling prior Seventh Circuit case holding that awarding statutory damages is discretionary under Section 2520(c)(2).)

The Sixth Circuit has provided the following framework for analyzing damages under Section 2520(c)(2):

> (1) The court should first determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any;
>
> (2) The court should next ascertain the number of days that the statute was violated, and multiply by $100;
>
> (3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is to be the presumed award; and
>
> (4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it.

*Dorris*, 179 F.3d at 430. As the award of damages under Section 2520 is discretionary, the Court may elect to award either the statutory sum or no damages at all. *Id.* The court may not, however, award an amount falling between those two figures. *Brown*, 371 F.3d at 818.

### 1. Actual Damages to Plaintiffs and Profits Derived by Defendant do not Exceed $10,000

In their motion, Plaintiffs identify their actual damages as lost programming and sales of receiving equipment to authorized subscribers.[6] (Doc. 14-1, 11:5-11.) Plaintiffs also claim that Defendant's piracy undermines the significant investments made to prevent such "stealing of DISH Network programming." (Doc. 14-1, 10:13-22.) Plaintiffs further allege that Defendant subscribed to Dark Angel for one month in September 2009, and two successive three-month periods beginning in March 2010, and have identified thirty-four separate occurrences in which Defendant accessed

---

[6] Plaintiff's average revenue per authorized subscriber is approximately $70 per month. (Doc. 14-5, Duval Decl., ¶ 18.)

9

the Dark Angel IKS server and intercepted DISH Network's satellite signal. (Doc. 14-1, 8:3-21.) Furthermore, Plaintiffs contend that Defendant had "full access" to its programming, including premium and pay-per-view channels, a value which exceeds the average monthly subscription. (Doc. 14-1, 11:7-9.)

Actual damages based on lost revenues over the given period appear to fall significantly short of the $10,000 statutory amount. Defendant is only shown to have *subscribed* to Dark Angel for a one-month period in 2009, and two successive three-month periods in 2010. Additionally, Plaintiffs have only provided evidence that Defendant *accessed* the Dark Angel server for a three-month period beginning on March 5, 2010, and ending on June 6, 2010. Using this three-month time period and multiplying it by the $70 per-month average subscription rate, this equates to approximately $210 (3 x $70) in total lost programming revenue. Although Plaintiffs have alleged that the value of Defendant's Dark Angel subscription "far exceed[ed]" this calculation, Plaintiffs have not specified or even approximated an actual value of programming received and viewed by Defendant.

With respect to actual costs incurred by Plaintiffs' investment in security technology to prevent piracy, presumably an accurate assessment of damages would require that such investments be totaled, then divided by the total number of pirates intercepting DISH Network programming. Considering that the number of pirates would be virtually impossible to ascertain, this amount would present only a rough estimate at best. *See DIRECTV, Inc. v. Huynh*, No. C 04-3496 CRB, 2005 WL 5864467, at *7 (N.D. Cal. 2005), *aff'd on other grounds by Huynh*, 503 F.3d at 847 ("true actual damages from the individual pirate's activities should instead be measured by the total costs it has paid for anti-pirate efforts plus its total revenue losses divided by the total number of pirates"). Moreover, Plaintiffs do not contend that Defendant profited from the piracy.

In addition to these calculation difficulties, Plaintiffs do not claim that their actual damages exceed $10,000. Moreover, there is insufficient evidence before the Court to assess actual damages in any event. *See Huynh*, 2005 WL 5864467, at *7 (actual and per-day damage calculations rejected because they were insufficiently supported). The Court concludes that the provable actual damages do not exceed $10,000.

**2.     Per-Day Damages Do Not Exceed $10,000**

The Court next turns to the per-day calculation of damages. Section 2520(c)(2)(B) provides for the assessment of statutory damages in the amount of $100 for each day of violation, or $10,000, whichever is *greater*. As discussed above, Plaintiffs have demonstrated that Defendant was in violation of the statute by accessing the Dark Angel IKS server on thirty-four separate occasions. These thirty-four instances, however, did not occur on thirty-four different days. Although Plaintiffs claim the records are not complete to show every occurrence of access by Defendant, Plaintiffs' evidence indicates that Defendant accessed the Dark Angel server on eight distinct days in 2010.[7] Since Congress has provided only for a calculation of damages of "$100 a day for *each day* of violation" (emphasis added), the per-day damages amount to $800 (eight days multiplied by $100). Based on the evidence presented, the per-day damage calculation totals $800.

**3.     The Presumed Damage Award is $10,000**

At the third step of the analysis, the court is to compare the actual and the per-day damages and award the greater of the two figures, unless each amounts to less than $10,000. Where both sets of damages are less than $10,000, the court must presume a $10,000 award of damages. *Dorris*, 179 F.3d at 430. Since the actual damage and the per-day damage calculations in this case amount to less than $10,000, the $10,000 amount becomes the presumed damage award. *Id.*

**4.     The Court Should Award Statutory Damages of  $10,000**

The final step of the analysis is determining whether it is appropriate to award the statutory damages.  The  federal courts of appeals considering Section 2520(c) have concluded that this determination is within the discretion of the district courts, and have provided a range of criteria for the courts to consider in assessing the propriety of damages. *See, e.g., Nalley* , 53 F.3d at 654; *Brown*, 371 F.3d at 818; *Reynolds*, 93 F.3d at 435.

As set discussed by the Fourth Circuit in *DIRECTV*, *Inc. v. Rawlins*, such factors include (1) the severity or minimal nature of the violation; (2) whether there was actual damage to the

---

[7] Defendant accessed the Dark Angel IKS server under the usernames "tvisamust" and "mustwatchtv" twice on March 5, 2010, once on March 11, 2010, nine times on March 12, 2010, three times on April 8, 2010, seven times on April 10, 2010, five times on May 28, 2010, once on June 2, 2010, and six times on June 6, 2010. (Doc. 14-4, Rogers Decl., ¶ 4(g), Exh. 8.)

victim; (3) the extent to any intrusion into the victim's privacy; (4) the relative financial burdens of the parties; (5) whether there was a reasonable purpose for the violation; and (6) whether there is any useful purpose to be served by imposing the statutory damages amount.  523 F.3d 318, 325-26 (4th Cir. 2008) (citing *Nalley*, 53 F.3d at 654).[8]

In applying this framework of factors, certain courts have determined that the presumptive $10,000 award of damages is excessive, citing a lack of evidence that the defendant profited from the pirate access.  *See, e.g., DIRECTV, Inc. v. Kaas*, 294 F. Supp. 2d 1044, 1049 (N.D. Iowa 2003) (plaintiff's motion for default judgement granted but awarded no damages under Section 2520(c)(2) because there was "no evidence [defendant] profited from the pirate access device" and there was "no evidence he even used the device, only that he received it.").  However, in *Rawlins*, the court specifically held that whether the defendant "used the devices for commercial purposes [or] purchased them for resale is not germane to an analysis of damages related to [the plaintiff's] patent violation of the statute."  523 F.3d at 327.

Many district courts, including several in this circuit, have awarded statutory damages of $10,000 upon default judgment.  *See, e.g., DIRECTV, Inc. v. Turnbough*, No. 2:04-cv-2409-GEB-GGH, 2006 WL 4007549, at *2 (E.D. Cal. Jan. 30, 2006) (awarding $10,000 statutory damages); *DIRECTV, Inc. v. Grosman*, No. 03-04176 CW, 2005 WL 1230791, at *2 (N.D. Cal. May 19, 2005) (awarding $10,000 statutory damages); *DIRECTV, Inc. V. Bowen*, No. 2:04-cv-2407-GEB-GGB, 2005 WL 5155093, at * 2 (E.D. Cal. Dec. 8, 2005).

Here, evidence exists to show that Defendant repeatedly purchased subscriptions to Dark Angel and accessed the Dark Angel IKS server on numerous occasions.  The Defendant did this presumably to avoid paying higher subscription fees as a legitimate subscriber of DISH Network programming.  Through the Dark Angel subscription, Defendant enjoyed full access to all of DISH

---

[8] Similarly, district courts have also considered similar factors such as "(1) whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of [plaintiff's] financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for [her] actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct."  *DirectTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1132 (M.D. Ala. 2004).

Network programming, including premium channels and pay-per-view events, programming with a significantly higher value than that of an average subscriber. Defendant illegally intercepted DISH programming from at least March 2010 through June 2010, and has failed to dispute Plaintiffs' claims in refusing to respond to this lawsuit.

Further, Plaintiffs have sufficiently demonstrated that they suffered significant financial harm from Defendant's actions through the loss of a legitimate subscriber and the necessity of implementing costly security measures to prevent such piracy. As set forth above, the plain language of Section 2520(c)(2)(B) does not provide for a range for damages as it only allows the court discretion to grant nothing or $10,000. *Doris*, 179 F.3d at 430. Awarding no damages to Plaintiffs would effectively reward Defendant for wrongful actions by allowing the misconduct to go unsanctioned. As discussed by the Fourth Circuit's decision in *Rawlins*, 523 F.3d at 326-27, a district court's refusal to award any damages without giving serious consideration to the adverse effects of allowing the misconduct to go unsanctioned is an abuse of discretion. Here, a refusal to award any damages incentivises, rather than deters, Defendant and others from similar acts of piracy. Thus, even if the provable actual damages to Plaintiffs in this case are somewhat de minimus, that factor is outweighed by the need for deterrence and the punitive purpose that the statute serves in this matter. *Rawlins*, 523 F.3d at 327-28 (whether a useful purpose would be served by awarding the statutory amount is a relevant factor for a district court to consider).

Accordingly, the Court finds it appropriate to recommend an award of $10,000 in statutory damages. This amount is adequate to hold Defendant accountable for misconduct and acts as a deterrent to others from committing similar acts in the future. Therefore, the Court recommends that the maximum allowable statutory damages be awarded pursuant to 18 U.S.C. § 2520(c)(2)(B) in the amount of $10,000.

**D.    Permanent Injunctive Relief Pursuant to 18 U.S.C. § 2520(b)(1) Should be Granted**

Plaintiffs contend that permanent injunctive relief should be awarded under Section 2520(b)(1) to prevent Defendant from violating Plaintiff's rights under the ECPA. (Doc. 14-1, 9:16-12:20.) Specifically, Plaintiff requests this Court to enjoin Defendant from "circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or

assisting other in intercepting DISH Network's satellite signal"; and "testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system." Section 2520(b)(1) provides that appropriate relief for a violation of Section 2520 includes "such preliminary and other equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1). Injunctive relief is appropriate when a party demonstrates (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court finds that Plaintiffs' request for a permanent injunction is appropriate. Based on Defendant's piracy of Plaintiffs' television programming, Plaintiffs have suffered irreparable injury. Additionally, damages alone are inadequate to prevent future piracy without injunctive relief. Defendant would suffer no hardship, since she would only be prevented from engaging in illegal activity. Further, the public interest would be served by protecting copyrights and aiding the enforcement of federal law. The Court finds all the criteria for a permanent injunction have been met and therefore recommends that Defendant be permanently enjoined from circumventing or assisting others in circumventing Plaintiffs' security system and from intercepting or assisting others in intercepting Plaintiffs' satellite signal.

## IV. CONCLUSION AND RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1. Plaintiffs' motion for default judgment be GRANTED;
2. Judgment be entered in this action against Defendant Elaine Sanchez as follows:
   a. $10,000 statutory damages for violations of 18 U.S.C. §§ 2511(1)(a) and 2520(a);

        b.      Immediate permanent injunctive relief enjoining Defendant and anyone acting in active concert or participation with, or at the direction or control of Defendant from (1) circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or assisting others in intercepting DISH Network's satellite signal; or (2) testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 27, 2012**             /s/ Sheila K. Oberto
                                              UNITED STATES MAGISTRATE JUDGE